### Ward Roper et al. v. A. C. Scurlock et al.

Decided May 31, 1902.

**1.—Local Option Election—Petition for.**

A petition for a local option election to be held for and throughout an entire county need not be signed by one-tenth of the qualified voters in each precinct wherein there is a municipal corporation, as required by the statute where the election is to be held for such precincts only. Sayles' Civ. Stats., 1897, art. 3384.

**2.—Same—Irregularities Not Vitiating.**

A local option election for a county which appears to have been a full and fair expression of the qualified electors will not be set aside for irregularities not affecting the result, such as the use in some precincts of only one ballot box, instead of two, with two election clerks, instead of four.

**3.—Same—Election Returns—Counting Ballots.**

The commissioners court may assume that the returns of such an election as made to it by election officers of the several precincts are correct, and may canvass the vote and declare the result from such returns, without opening the boxes and counting the votes.

**4.—Same—Order for Election—Signing Minutes.**

Where the order for holding a local option election was duly made by the commissioners court and entered in its minutes, the fact that the minutes were not signed until after the election did not affect its validity.

**5.—Same—Notice of Election.**

The giving of notice of a local option election for twelve days, as required by Sayles' Civil Statutes (1897), article 3387, is sufficient, and it need not be for twenty days, as required by article 1728, relating to general elections.

**6.—Same—Notices—Seal of Clerk.**

The election was not rendered invalid by reason of the fact that the posted copies of the notice of election, certified to by the clerk and signed by him officially, did not have his official seal attached, nor because of trivial errors therein which could not have misled the voters.

**7.—Same—Election Officers—Selection—Presumption.**

Where the evidence shows that the election at a given box was not held by the officer appointed by the commissioners court, but by one who was a qualified voter at that box; that no objection was made to his so holding it, and that every legal voter desiring to vote was permitted to do so, it will be presumed that the person appointed to hold the election failed to appear or refused to act, and that the voters present selected such other person, as providd in the statutes. Rev. Stats., art. 1714.

**8.—Same.—Place of Election—No Objection Below.**

Objection that in one of the voting precincts the election was not held at the place designated by the commissioners court can not be made for the first time in the appellate court.

**9.—Same.**

Where the election was held within the precinct at the usual place for holding elections, and in full view of the place designated by the commissioners court, with sufficient reason shown for not holding it at the place so designated, its validity could not be assailed upon that ground.

**10.—Same—Invalidity in Part—Result Not Affected.**

Where the election for one precinct was invalid because not held within its limits, but the vote at that box could in no event have changed the result of the election for the county, such invalidity has no effect.

Appeal from Johnson. Tried below before Hon. William Poindexter.

*S. C. Padelford, H. P. Brown,* and *W. H. Bledsoe,* for appellants.

*W. B. Featherstone, O. T. Plummer, W. D. McKoy,* and *Goldsmith & Walker,* for appellees.

BOOKHOUT, Associate Justice.—This is a suit instituted by Ward Roper and others, appellants herein, as plaintiffs, against A. C. Scurlock, publisher of the Cleburne Chronicle, and W. D. McKoy, county judge of Johnson County, to enjoin the publication of and carrying into effect of an order of the Commissioners Court of Johnson County declaring the result of a local option election held in said county on the 13th day of September, 1901. The petition set up various grounds attacking the legality of said election and sought to have the election declared null and void. A trial before the court resulted in a judgment for the defendants and plaintiffs have appealed. The facts sufficiently appear in the opinion.

*Opinion.*—1. It is contended that where the precincts in which it is proposed to hold a local option election embrace within their limits an incorporated town or city, such local option election can only be ordered when the petition for same is signed by qualified voters not less than one-tenth of the number of the total vote cast for Governor at the last preceding general election held in said precincts in which said incorporated towns or cities are situated. It was admitted on the trial of the case that within the limits of Johnson County, at the date of said local option election, there were situated the city of Cleburne, the city of Alvarado, and the town of Grandview, each of which is a municipal corporation. It was further admitted that the petition which was presented to the Commissioners Court, and upon which said local option election was ordered, was not signed by one-tenth of the qualified voters voting at the last general election in the precincts in which said towns and cities were situated. The contention is that when a local option election is ordered in a county, if there be one or more municipal corporations in said

county, the petition must be signed by one-tenth of the qualified voters of the precinct in which such municipal corporation is situated in order to authorize the commissioners court to order an election upon said petition. The contention is without merit. The statute, which pro-vides that "if the precinct or precincts designated embrace within their limits an incorporated town or city, then such election shall only be ordered when the petition for the same is signed by qualified voters not less than one-tenth in number of the total vote cast for Governor at the next preceding general election in such incorporated town or city," only applies where the election is called to determine whether local option shall prevail in the precinct or precincts in which such municipal corporation is located, and not where the election is called to determine whether local option shall prevail throughout the county.

2. It is insisted that in each election precinct which shall have cast more than 100 votes at the last preceding general election the presiding officer of such precinct shall, on or before the day of the election, select from the qualified voters of the precinct three judges and four clerks to act in conducting said election, and that two ballot boxes shall be used in holding said election. It was admitted on the trial that at the local option election held in a majority of the precincts in each of which more than 100 votes were cast at the last general election, that said local option election was held by two judges, two clerks, and one presiding officer, and that but one ballot box was used in each of said precincts. It is insisted that for this reason the election was void. Upon inspection of the record it appears that the election in the several precincts to which the above contention applies was a full, free, and fair expression of the qualified electors of the respective precincts. There is no intima-tion whatever that fraud was practiced or that the result of the election was in any way affected by the fact that the election was held by five officers insead of seven, and that there was only one ballot box used instead of two. The contention insisted upon is without merit.

3. Complaint is made that the trial court erred in holding that the judgment of the Commissioners Court declaring that said election had gone in favor of prohibition was legal and correct, because the Com-missioners Court did not open the ballots and count the votes, but merely ran up the returns made by the persons pretending to hold said election and arrived at an illegal result by said method. The evidence shows that the Commissioners Court, in arriving at the result of the election, took the returns and estimated the result therefrom. The returns were made on blanks furnished by the county clerk. The Commissioners Court did not open the boxes and count the ballots. We think it was the duty of the judges holding the electing to count the ballots and make report of their count to the Commissioners Court, and to certify to the same. The Commissioners Court was authorized to presume that the certificates to the returns made by the election officers were correct. The failure of the Commissioners Court to open the ballot boxes and count the votes

presents no ground for holding the election void in the absence of fraud or of such irregularity as would show that the proper result had not been reached. It was shown that the Commissioners Court pursued the same method in arriving at the result that is pursued in ascertaining the result in general elections. Chapman v. State, 39 S. W. Rep., 113; Hunnicutt v. State, 75 Texas, 233; Fowler v. State, 68 Texas, 35.

There was evidence showing a slight discrepancy between the tally sheets and the poll lists in one or two of the precincts. This discrepancy was trivial and did not in any way affect the result.

4. It is insisted that the court erred in holding the election valid for the reason that the judgment of the Commissioners Court ordering said election was not signed by the county judge and was not attested by the clerk of the Commissioners Court, and further, that the minutes of said court were not signed until after the term had closed and the election had been held. The term of the Commissioners Court at which the election was ordered commenced on the second Monday in August. The next term began the second Monday in November. The election was held September 13th. The minutes for the August term were not signed until after the election was held. The evidence clearly shows that the order calling the election was passed by the Commissioners Court on August 15, 1901. A pencil copy of the order was prepared, and after having been passed, was signed by the county judge and left with the clerk of the court to be entered on the minutes. The clerk entered the order in the minutes. In doing so he did not copy the signature of the county judge. The order appears duly entered in the minutes of the court for that term. The minutes for the term began on page 75, but this order appears on page 79 of the minutes. The order having been duly passed and entered in the minutes of the court, the fact that the minutes were not signed until after the election did not affect the validity of the order for the election held thereunder. Ewing v. Duncan, 81 Texas, 232; Lockhart v. State, 32 Texas Crim. Rep., 149; Lillard v. State, 53 S. W. Rep., 125; Waggoner v. Wise County, 43 S. W. Rep., 836; Ex parte Williams, 35 Crim. Rep., 75.

5. It is contended that the court erred in holding that proper and legal notice of said election held on the 13th of September, 1901, was given, because the uncontradicted evidence shows that no regular legal notice of said election was given in accordance with article 1728 of the Revised Statutes, and that the evidence further shows that certified copies under the seal of the Commissioners Court by the clerk were not posted in five places as required by law. The contention is that the failure to give notice as required by article 1728, Sayles Civil Statutes, was fatal to the validity of said election, even though the clerk of the Commissioners Court gave notice of the election as provided by article 3387. Five copies of the order of the Commissioners Court were posted by the clerk of said court for fifteen days prior to the day of the election at different public places within Johnson County. In addition to these

notices, from three to five copies of the order duly certified to by the clerk and signed by him officially were sent to the presiding judges of the election precincts and were by them posted up at public places in the respective election precincts.   The evidence clearly shows that the notice given fully complied with the terms of article 3387, Sayles' Civil Statutes (1897).   This statute only requires twelve days notice.   The proceeding is special and makes full provision as to the length of time notice must be given.   We are of the opinion that the giving of notice for the length of time required by this statute was sufficient, and it was not necessary that the notice should be given for twenty days as required by article 1728 relating to general elections.   This question was not before this court in the case of Kimberly v. Morris, 31 Southwestern Reporter, 810.   The question there was whether the notices must be posted in "public places," the statute, article 3387, not designating the places.   This court held that in this respect the statute was cumulative of the general election law and the notice should be posted at the places designated by the general law.   Nor is there any merit in appellants' contention that the copy of the order posted by the clerk was not a correct and true copy of the order as recorded in the minutes of the court.   The variance between the order entered in the minutes and the copies posted was trivial and could not have misled the voters.   The failure of the clerk to attach the seal of the Commissioners Court to the copies posted did not affect their validity.   The copies were certified to by the clerk and signed by him officially.   Winston v. State, 32 Texas Crim. Rep., 59; Voss v. Terrell, 34 S. W. Rep., 171.

6.   It is insisted that the election in precincts Nos. 14, 15, 23, and 26 was void because not held by the presiding officer designated by the Commissioners Court.   The election in precinct No. 15 was not held by the officer designated but was held by J. H. Bowman.   Bowman was elected by the qualified voters to hold the election in precinct No. 15, and he selected clerks and judges from among the qualified voters, and no one questioned his authority nor was any objection made to the manner in which he was elected or to his holding the election.   W. H. Howle, the officer designated, was unable to conduct the election in precinct No. 23, and B. F. Belton was appointed by the qualified voters present to hold said election.   D. K. Smith, the person designated to hold the election in precinct No. 26, was not present on the morning of the election, and R. W. Moore, a qualified voter of said precinct, was appointed by the voters present to hold said election.   Our statute authorizes the voters present to select a presiding officer when the one appointed fails to attend or refuses or fails to act.   Sayles' Civ. Stats. (1897), art. 1714.   The evidence shows that the presiding officers of the several precincts named did fail to act and that the voters present at the different precincts did proceed to appoint a presiding officer, and the officer so appointed was recognized as the presiding officer and held the election.   In reference to precinct N. 14 the evidence shows that J. F. Thomas held the election.

It does not show how he was elected. He was a qualified voter of said precinct and was recognized by the voters as a presiding officer, and every legal voter desiring to vote was permitted to do so. In this condition of the evidence we must infer that the facts existed which, under the statute, authorized the appointment of a presiding officer by the voters present and that Thomas was so appointed. Deaver v. Tripp, 27 Texas Civ. App., 483.

7. It is contended that the election held in precincts Nos. 14, 15, 23, 25, and 26 was illegal because the same was not held at the several places designated by the Commissioners Court. In reference to the places at which the election was designated to be held appellants did not raise the question that the election in precinct No. 15 was not held at the place designated by the Commissioners Court, and the question as to said precinct can not be raised for the first time in this court. The election in precincts Nos. 23, 25, and 26 was held within the limits of the respective precincts and within plain view of the places designated by the Commissioners Court, and only a short distance therefrom, in no case more than 125 feet, and in the places where elections were usually held in said precincts, and the voters knew where the election would be held. The evidence further shows why said election was not held at the places designated. In this condition of the record the contention is without merit as to the election in these precincts. Ex parte White, 33 Texas Crim. Rep., 594; Davis v. Wren, 75 Texas, 420; Bell v. Faulkner, 84 Texas, 187. The election for precinct No. 14 was held outside the territorial limits of said precincts and was held within the territorial limits of precinct No. 15. The evidence is conflicting as to whether or not a place could have been found in the business section of Joshua, in precinct No. 14, in which to hold the election, but the fact that the election could not have been held in the place designated by the Commissioners Court is admitted. The place where the election was actually held, while located in precinct No. 15, was not more than sixty feet from the place designated by the Commissioners Court, and there was evidence that it was the only place that could have been used without going from 200 yards to two miles away, and was the most accessible place to the voters. One witness examined the poll list for precinct No. 14 and testified that he was acquainted with every man whose name appeared on same with exception of two, and that they were all qualified voters in that precinct, and that he saw no illegal votes on said poll list. There was evidence that it was well known where the election would be held. There was further evidence that the fact that the election was held in precinct No. 15 did not affect the result of the election. The evidence does not show that there was any fraud or improper motive in holding the election for said precinct. We are not prepared to hold, in view of the constitutional requirement that all electors shall vote in the election precinct of their residence (Constitution, article 6, section 2), that the election held for precinct No. 14 was valid. Conceding that the election for this precinct was invalid, this fact would not render the

election held in the other precincts invalid or illegal. If the election in precinct No. 14 was invalid because not held within the territorial limits of that precinct, the Commissioners Court should have ignored the returns therefrom. Had this been done the result of the election in the county would have been the same. The returns from this precinct show 89 votes cast, of which 40 were for prohibition and 49 against. The total vote in the county, including this precinct, shows 2221 votes for prohibition and 2107 against, a majority of 114 for prohibition. Had the returns from precinct No. 14 been ignored and not counted, the result in the county would have shown a majority of 123 votes for prohibition. It is, however, insisted by appellants that as the election for precinct No. 14 was illegal the court can not look to the returns therefrom to determine whether the result of the election in the county was affected thereby. It is contended that all the qualified voters of said precinct should be treated as having been deprived of the privilege of voting in said election, and for this reason the court can not say that they would not have voted against prohibition. We do not concur in this contention. If, however, it were true, still the result in the county would have been the same. The evidence shows that there were 114 votes cast in precinct No. 14 at the last gubernatorial election. If all these were counted as against prohibition, still the vote in the county . would show a majority of 9 for prohibition.

After a careful consideration of the evidence contained in the record we are forced to the conclusion that the object of this election, i. e., to ascertain the free, full, and fair expression of the qualified voters of Johnson County on the question of prohibiting the sale of intoxicating liquors in that county, was reached in said election and the result declared by the Commissioners Court. None of the matters complained of by appellants affects the result of the election. It is not contended that there was any fraud in the ordering or holding of said election. As before stated, if it be conceded that the election held for precinct No. 14 was illegal, the result in the county was not affected thereby and would have been the same had the returns from said precinct not been counted. We conclude that the judgment should be affirmed.

*Affirmed.*

Writ of error refused.